| AOC-105          Doc. Code: CI | | Case No. 12-CI-00259 |
|---|---|---|
| Rev. 1-07 | | Court  ☑ Circuit [ ] District |
| Page 1 of 1 | | |
| Commonwealth of Kentucky | | County  Trigg |
| Court of Justice   www.courts.ky.gov | | |
| CR 4.02; CR Official Form 1 | CIVIL SUMMONS | |

**PLAINTIFF**

JERALD          MARION          OLDHAM
27 Sycamore Drive


Eddyville          Kentucky          42038

VS.

**DEFENDANT**

EXTENDICARE HOMES, INC.    d/b/a/    SHADY LAWN NURSING HOME



Service of Process Agent for Defendant:
CSC-Lawyers Incorporating

Service Company

421 West Main Street

Frankfort                                              Kentucky          40601

THE COMMONWEALTH OF KENTUCKY
TO THE ABOVE-NAMED DEFENDANT(S):

    You are hereby notified a legal action has been filed against you in this Court demanding relief as shown on the document delivered to you with this Summons. Unless a written defense is made by you or by an attorney on your behalf within 20 days following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

    The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____ 11/21 , 2012          _Pam Perry_____ Clerk

                       By: _____ D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

this _____ day of _____, 2_____.

             Served by: _____

                                _____ Title

FILED
DATE: _11-1-12_
PAM W. PERRY, CLERK
TRIGG CO. CIRCUIT/DISTRICT COURT
BY: _____ D.C.

COMMONWEALTH OF KENTUCKY
TRIGG CIRCUIT COURT
CASE NO. 12-CI-00259

JERALD MARION OLDHAM                                    PLAINTIFF
27 Sycamore Drive
Eddyville, Kentucky 42038

v.                              **COMPLAINT**

EXTENDICARE HOMES, INC. d/b/a/
SHADY LAWN NURSING HOME

SERVE:   CSC-Lawyers Incorporating
         Service Company
         421 West Main Street
         Frankfort, Kentucky 40601                      DEFENDANT

* * * * * * *

The Plaintiff, Jerald Marion Oldham, by counsel, for his Complaint against Defendant Extendicare Homes, Inc. d/b/a Shady Lawn Nursing Home, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      The Plaintiff Jerald Marion Oldham is, and at all times relevant to this Complaint was, a resident of Lyon County, Kentucky.

2.      Extendicare Homes, Inc. d/b/a Shady Lawn Nursing Home ("Shady Lawn") is, and at all times relevant to this Complaint was, a foreign corporation duly licensed and authorized to do business in the Commonwealth of Kentucky and doing business in Kentucky.

3.      Starting on or around November 22, 2011, Jerald Oldham sought and received treatment at Defendant Shady Lawn located in Trigg County, Kentucky. He continued to receive treatment at Shady Lawn until December 3, 2011.

4.     Venue is proper because the events complained of herein all occurred in Trigg County, Kentucky.

5.     The claims of Plaintiff exceed the minimal jurisdictional amount of this court.

## NEGLIGENCE OF DEFENDANT EXTENDICARE HOMES, INC d/b/a SHADY LAWN NURSING HOME ("SHADY LAWN")

6.     Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as if the same were set forth herein.

7.     Defendant Shady Lawn, by and through its agents, servants, officers, representatives, employees and/or ostensible agents, was negligent in its care and treatment of Jerald Oldham when it deviated from the acceptable standard of care by, among other things, failing to develop and implement an appropriate plan of care to prevent falls. Such negligence was a substantial factor in causing or bringing about the damages sustained by Mr. Oldham. Specifically, Defendant Shady Lawn's negligent care caused Mr. Oldham to fall and severely injure his knee.

8.     As a direct and proximate result of Defendant Shady Lawn's negligence, Jerald Oldham has suffered, and/or will suffer in the future, past and future medical expenses, mental anguish, pain, and suffering.

9.     That at all times herein mentioned, the acts and/or omissions of Defendant Shady Lawn were such major and significant deviations from accepted medical, nursing, and rehabilitation practice that they, in addition to negligence, constituted wanton, grossly negligent, reckless and/or oppressive conduct and demonstrated a complete disregard and reckless indifference to the safety and welfare of Jerald Oldham, entitling Plaintiff to punitive damages.

**WHEREFORE**, the Plaintiff, Jerald Marion Oldham demands as follows:

1.     Judgment against the Defendant to compensate Plaintiff, Jerald Oldham,

for past and future medical expenses, mental anguish, pain, and suffering;

2.     Punitive damages;

3.     For a trial by jury on all issues;

4.     For costs herein expended, including a reasonable attorney's fee;

5.     For prejudgment interest from the date of the injury until paid; and

6.     For all other necessary and proper relief to which Plaintiff may be entitled.


Respectfully submitted,


Vanessa B. Cantley
Megan R. U'Sellis
BAHE COOK CANTLEY & NEFZGER, PLC
Marion E. Taylor Building
312 South Fourth Street, 6th Floor
Louisville, KY 40202
Tel. (502) 587-2002
Fax. (502) 587-2006
vanessa@bccnlaw.com
megan@bccnlaw.com
*Counsel for Plaintiffs*

FILED

DATE: 11 / 21 / 12

PAM W. PERRY, CLERK

TRIGG CO. CIRCUIT/DISTRICT COURT

BY: _____ D.C.

COMMONWEALTH OF KENTUCKY
TRIGG CIRCUIT COURT
CASE NO. 12-CI-00259

JERALD MARION OLDHAM                                          PLAINTIFF

v.        **PLAINTIFF'S FIRST SET OF INTERROGATORIES AND
REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT
EXTENDICARE HOMES, INC. d/b/a SHADY LAWN NURSING HOME**

EXTENDICARE HOMES, INC.
d/b/a SHADY LAWN NURSING HOME                                DEFENDANT

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

Pursuant to Rules 33 and 34 of the Kentucky Rules of Civil Procedure, Plaintiff
Jerald Marion Oldham, by counsel, requests that Defendant Extendicare Homes, Inc.
d/b/a Shady Lawn Nursing Home ("Shady Lawn") answers the following Interrogatories
and Requests for Production of Documents under oath and in writing, within forty-five
(45) days from service hereof.  In accordance with C.R. 34, Defendant is requested to
produce the documents requested herein for inspection and copying at the offices of
Plaintiff's counsel at Marion E. Taylor Building, 6th Floor, 312 South Fourth Street,
Louisville, Kentucky 40202.

## DEFINITIONS AND INSTRUCTIONS

1.      The term "Defendant" or "Defendants" as hereinafter used in these
interrogatories shall include, in addition to Shady Lawn, its attorneys, agents, servants,
employees, representatives, private investigators, and others who are in possession of,
or who may have obtained information for or on behalf of, the named party or parties.

2.     The term "document" or "documents" as hereinafter used in these interrogatories is meant to coincide with the use of that term in Rule 34.01 of the Kentucky Rules of Civil Procedures for the Superior Court, State of Kentucky, and is intended to include all written or graphic material, however produced or reproduced, of every kind and description, including, but not limited to, the original and any copy, regardless of origin or location, of any applications, resumes, job postings, contracts, leases, agreements, checks checkbooks, check stubs, check statements, bank statements, deposit slips, journals, general and subsidiary ledgers, other types of ledgers, accounts, bills, promissory notes, invoices, punch cards, purchase orders, acknowledgments, authorizations, sales slips, receipts, shipping papers, letters or other forms of correspondence, envelopes, folders or similar containers, communications, studies, summaries, minutes, minute books, agenda, bulletins, notices, announcements, proofs, sheets instructions, manuals, lists, visitor's log, schedules, price list, telegraphs, sketches, plan, specifications diagrams, drafts, records, formal records, desk calendars, notebooks, diaries, registers, appointment books, budgets, analyses, projections, minutes or meetings, conferences or discussions of any kind, tax returns    books, pamphlets, periodicals, letters, memoranda, email, reports, records, studies, notes (whether typewritten, handwritten or otherwise), maps, drawings, working papers, charts, papers, graphs, indexes, tapes, data sheets, computer print-outs nay other printout sheets, intranet, photographs, movies or any other printed, written, electronic, computer-generated, computer-stored, recorded, transcribed, filmed, photographic or graphic matter, however produced or reproduced or stored, to which you have or have had any access.

3.     The term "computer data" means any documents, information or data ever placed into or stored on any of your computers or computers upon which your employees perform their job duties, including, but not limited to, the STI system, any hard drives, servers, lap tops, disks, storage systems, retrieval systems and similar systems, E-mails, Internet transmissions, electronic bulletin boards, websites, diary systems, calendar systems, tickler systems and any other computer programs or magnetic storage disks or media.

4.     "Incident(s)," "incident(s) in question," "occurrence(s)," "occurrence(s) in question," "event(s)," "claim(s)," or "allegation(s)" means and/or refers to the events and factual allegations more fully described in Plaintiffs' Complaint, including any amended or supplemental complaint.

5.     "Identify" when referring to:

(a)     **a person** means to state his or her full name, address and telephone number; .

(b)     **a public or private corporation, partnership, association, or other organization, or a governmental agency** means to state its full name and present or last known pertinent business address and phone number;

(c)     **a statement** means to identify who made it, who took or recorded it, and all others, if any, present during the making thereof; to state when, where and how it was taken or recorded, and to identify who has present or last known possession, custody or control of it;

(d)     **a document** means to give a reasonably detailed description thereof, including, if applicable, when, where and how it was made; and to identify who created it and who has present or last known possession, custody or control of it; and

(e)     **any other tangible thing** means to give a reasonably detailed description thereof, including, if applicable, when, where and how it was made; to identify who made it, and to identify who has present or last known possession, custody or control of it.

6.     The term "specific" and "specifically" as hereinafter used in these Interrogatories, means precisely, exactly or definitely, setting forth in detail the precise and exact sequence of events or transactions entailed in the occurrence which is the subject of the interrogatory, however if you are not able to be "specific", then a general answer should be provided.

7.     "Insurance policy" means any type of agreement or insurance policy under which any person or organization may be liable to pay all or part of any judgment which may be entered in this Lawsuit, or to indemnify or reimburse for the costs or attorneys' fees incurred in being a party to this Lawsuit, or to indemnify or reimburse for payments made to satisfy any judgment entered in this Lawsuit. "Insurance policy" also includes all types of insurance policies, including but not limited to comprehensive director and officer, errors and omissions, employment practices liability, general liability, bonds, workers' compensation, limited liability, automobile, nuclear, fidelity, personal injury, property care, custody and control, contractual liability insurance, commercial blanket bond coverage, builder's risk, all risk, excess and umbrella. Further, "insurance policy" means and includes, but is not limited to all insurance policies and attachments thereto, and other similar documents pertaining to the insurance policy, including, but not limited to, declaration pages, certificates of insurance, exclusions, endorsements, amendments, riders, and binders.

8.     "Insurance carriers" means any and all insurance carriers whether primary, excess or a reinsurer.

9.     If any document is withheld under a claim of privilege, furnish a list which identifies each document for which a privilege is claimed, including the following information:

      (a)    The date of the document;

      (b)    The sender;

      (c)    The recipient;

      (d)    The person to whom copies were furnished along with his or her job title;

      (e)    The subject matter of the document;

      (f)    The basis upon which the privilege is claimed; and

      (g)    The paragraph of these Interrogatories to which said documents respond.

10.     Objections to requests should be explained with particularity, and all factual and legal reasons supporting the objections are to be listed. If you object to answering any part of any request, specify the part to which you object, and respond to the remainder.

11.     These requests are intended to be continuing in nature, and any information which is discovered by you subsequent to the service and filing of your answers must be brought to the attention of the inquiring Plaintiffs through supplemental responses, within a reasonable time following discovery, but in no event later than thirty (30) days after discovery of the information.

## INTERROGATORIES

1.     Please state the name and address of each person who answered or assisted in answering these interrogatories and requests for documents.

**ANSWER:**


2.     Please identify each and every person known to Defendant, or any agent or employee of Defendant, who may have knowledge about the occurrence alleged in the complaint; the name, address and relationship to Defendant of each; and description of all information or knowledge known to such person.

**ANSWER:**


3.     Please identify any persons, employees, agents, or independent contractors of Defendant who were responsible for or provided any care, treatment, services, or monitoring of Mr. Oldham during the time he was a resident at Shady Lawn beginning on or about November 22, 2011, and the nature of scope of their interaction with Mr. Oldham.

**ANSWER:**


4.     What is Defendant's opinion as to the most likely explanation of how the occurrences alleged in Plaintiff's Complaint happened?  Please explain what the opinion is and any and all facts upon which it is based.

**ANSWER:**

5.     Describe Mr. Oldham's condition in detail when he was admitted to Shady Lawn on or about November 22, 2011.

**ANSWER:**

6.     Please state in full detail how the alleged occurrences happened, giving events in detail in the order in which they occurred, which had any bearing on the cause and manner of the happening of the alleged occurrences.

**ANSWER:**

7.     During Mr. Oldham's residency at Shady Lawn, were any directions, instructions, orders, schedules, or assessments created or given by Defendant's agents or employees relating to Mr. Oldham's risk of pressure ulcers, bedsores, or skin breakdown; how to reduce such risk; or for assistance of Mr. Oldham with turning or repositioning himself in bed at predetermined intervals of time?

**ANSWER:**

8.     Identify and describe any plan, policy, or guideline the Defendant requires or encourages its agents or employees to adhere to relating to the evaluation and reduction of patients' risk of pressure ulcers, bedsores, or skin breakdown.

**ANSWER:**

9.     During Mr. Oldham's residency at Shady Lawn, please identify and describe any and all actions taken by Defendant, its agents, employees, or independent

contractors, to evaluate and reduce Mr. Oldham's risk of pressure ulcers, bedsores, or skin breakdown, and how often Mr. Oldham was turned or repositioned in bed.

**ANSWER:**

10.   During Mr. Oldham's residency at Shady Lawn, were any directions, instructions, orders, schedules, or assessments created or given by Defendant's agents or employees relating to Mr. Oldham's risk of falling; how to reduce such risk; and how to care for or treat his existing knee issues?

**ANSWER:**

11.   Identify and describe any plan, policy, or guideline the Defendant requires or encourages its agents or employees to adhere to relating to the evaluation and reduction of patients' risk of falling.

**ANSWER:**

12.   During Mr. Oldham's residency at Shady Lawn, please identify and describe any and all actions taken by Defendant, its agents, employees, or independent contractors, to evaluate and reduce Mr. Oldham's risk of falling and to care for or treat his existing knee issues.

**ANSWER:**

13.   Describe any and all measures employees, agents, and/or servants of Shady Lane were taking in order to insure the safety of Mr. Oldham while a resident at

Shady Lane.  Please describe why these procedures failed to prevent Mr. Oldham's fall and whether any individual failed to comply with procedures put into place.

**ANSWER:**

14.    Does this Defendant contend that there was any deviation from accepted standards of care or of good medical, nursing or rehabilitation practice on the part of any other Defendant in this lawsuit?  If so, please provide specific and complete details of such alleged deviations.

**ANSWER:**

15.    Does Defendant contend that there was any failure of the Plaintiff to mitigate damages?  If so, please provide specific and complete details of such alleged failures.

**ANSWER:**

16.    Does Defendant contend that there was any negligence on Plaintiff's behalf?  If so, please provide specific and complete details of such alleged negligence.

**ANSWER:**

17.    If you have asserted any affirmative defenses in your Answer, please list each and every fact upon which you rely in asserting each affirmative defense.

**ANSWER:**

18.    Please state the number of residents in the care of Shady Lawn during Mr. Oldham's residency.

**ANSWER:**

19.    Please state the number of registered nurses, treatment nurses, licensed practical nurses, nurses aides, certified nursing assistant, and state tested nursing assistants that were employees or independent contractors of Shady Lawn during Mr. Oldham's residency.

**ANSWER:**

20.    Are there any incident reports, internal memoranda, or other writings relating to any aspect of Mr. Oldham's injuries or his care during his residency at Shady Lawn? If so, please describe the contents of these reports in detail, including the date the document was prepared, the reason for its preparation, including any insurance requirements or requirements by any standards, a brief description of the subject matter of each document, and the custodian of each document.

**ANSWER:**

21.    Please state whether Shady Lawn has been inspected by any federal or state agency within the last five (5) years. If it has, please state the dates of the inspection, the agency that conducted it, whether any deficiencies were found by inspectors, if any regulations or regulatory standards were found to have been violated, and if Shady Lawn was cited, fined, or if any other action was taken by inspectors because of any deficiency or violation.

**ANSWER:**

22.    Please state whether you have ever been sued for negligence or malpractice, or whether any claim for such has ever been made against you.  If so, indicate for each claim or suit: the name and address of the plaintiffs; the name and address of each other defendant; the date, court and docket number where suit was instituted; the factual allegations of the plaintiff, whether the case was settled, tried to a verdict, or dismissed; and the terms of any settlement and the verdict if there was one.

**ANSWER:**

23.    Please identify if there have been any complaints, reports, or other notification to Defendant relating to patients falling within the last five (5) years.  If these items exist, please describe their contents in detail, including the date of the complaint, report, or notification, and the party who made it.

**ANSWER:**

24.    Please identify all proposed expert witnesses including:

    a.  Name and Address;

    b.  Specialty;

    c.  All professional liability insurers for said witness for the last five (5) years;

    d.  Each and every medical malpractice action in which said witness has testified as an expert witness;

e. Each and every article and/or other written material prepared by each such expert relating to any issue in this action;

f. The subject matter on which the expert is expected to testify;

g. The substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each opinion;

h. Full identification of all books, journals, articles or other publications or treatises consulted or relied on by the expert; and

i. All documents, records or other things examined or reviewed. If any reports were oral, state the substance of each such report and the date on which said report was made.

**ANSWER:**

25.    Please state whether you, your attorney, or anyone acting on your behalf, has obtained any statements in any form, from any person regarding any of the events or occurrences referred to in the Complaint. If so, please give the name, address, and telephone number of each person from whom such statement was taken, the date on which each such statement was taken, the name and address of the person who took such statement, the names and addresses of such persons having custody of the statement, and whether such statements were written by a recording device, by a court reporter or stenographer.

**ANSWER:**

26.    Please state whether you, your agents, servants, attorneys, or employees have possession, custody or control of any photographs, video recordings or audio

recordings of the Plaintiff.  If so, please state the name and address of the custodian of the photographs or recordings, the name and address of the person who took the photographs, video recording or audio recording, and the date on which the photographs or recordings were taken.

**ANSWER:**

27.    At any time after the alleged occurrence, did the Defendant or any agent or employee of Defendant have any conversation(s) or communication with the Plaintiff, in any manner, in regard to the happening of the alleged occurrence(s)?  If so, please state the words or substance of all communication(s); the dates setting forth the time of day; the place(s) communication(s) occurred; the identification, including name, address, and occupation, of all such agent(s) or employee(s); and the names and addresses of every person present at the time of all or communication(s).

**ANSWER:**

28.    If you have any insurance policies covering this type of claim, state the name and address of your insurance carrier(s); all of your policy limits; policy number(s); and policy period(s).

**ANSWER:**

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Please produce true copies hereto of all documents, records, or other writings or tangible things relied upon or consulted or referred to in connection with preparing these answers.

**RESPONSE:**


2.      Please produce any audiotapes, videotapes, or computer data that reflect or contain any statements, utterances, communications, and/or images pertaining to Mr. Oldham.

**RESPONSE:**


3.      Please produce all contractual indemnity agreements between you and any other individual whom you claim might be responsible in whole or in part for the claims made the basis of Plaintiff's claims against you in this lawsuit.

**RESPONSE:**


4.      Please produce all non-privileged computer data, correspondence, communications, emails or other documents that reflect or comprise communications between you, or your employees that were created at any time to the extent such communications refer to or related to Mr. Oldham, his residency at Shady Lawn, and/or the claims and events made the basis of Plaintiff's claims or your defenses in this lawsuit.

**RESPONSE:**

5.     Please produce all cassette recordings, videotapes, or other electronic recordings, and any transcripts of same, of any meetings, conversation, or event which Mr. Oldham was a participant or a topic of discussion.

**RESPONSE:**


6.     Please produce all non-privileged written, oral, recorded or any other kind of statement or communication of any person with knowledge of facts that you believe to be relevant to this lawsuit, including employees, agents, or representatives of Shady Lawn.

**RESPONSE:**


7.     Please produce all non-privileged documents or computer data that were created, reviewed, sent or modified from the time Mr. Oldham became a resident at Shady Lawn on or about November 22, 2011, and ending on the date the jury for this trial of this case is sworn that are located as a result of a word search using the words "Jerald Oldham" or "Oldham" in all word processing programs or electronic mail programs on all computers, laptops, PDAs, Blackberry Email Devices or servers that were used or accessed by anyone who treated or supervised the treatment or care of Mr. Oldham.

**RESPONSE:**

8.      Please produce a complete and legible copy of all your office records and copies of all papers, reports, notes, and writings of any sort, kept with your office records, of Mr. Oldham.

**RESPONSE:**

9.      Please produce any and all written reports of experts, as well as all resumes and curriculum vitae for any expert identified in response to these requests.

**RESPONSE:**

10.     Please produce a copy of all documents contained in, or that were ever placed in, Mr. Oldham's medical records that were kept by Shady Lawn.

**RESPONSE:**

11.     Please produce a copy of all non-privileged electronic mail messages that contain Mr. Oldham's name to the extent the email was created or sent between the date you first undertook Mr. Oldham's care and the date the trial in this lawsuit begins to the extent the emails relate to, discuss, or mention Mr. Oldham, his treatment at Shady Lawn, or the claims and events made the basis of Plaintiff's claims or your defenses in this lawsuit.

**RESPONSE:**

12.     Please produce all non-privileged documents or computer data submitted to, or received from, any of Shady Lawn's liability insurance carriers, if any, that relate to Plaintiff or the claims made by Plaintiff in this lawsuit.

**RESPONSE:**

13.     Please produce all personnel files for any person who supervised, assisted in, and/or was responsible for the treatment or monitoring of Mr. Oldham.

**RESPONSE:**

14.     Please produce copies or any documents that are used by Shady Lawn to keep track of employee's time and/or log employees' hours, including but not limited to timecards, records, and/or sign-in logs, for any person who supervised, assisted in, and/or was responsible for the care, treatment, and monitoring of Mr. Oldham.

**RESPONSE:**

15.     Please produce a copy of any "insurance policy" under which coverage for the claims made in this lawsuit might or will be afforded.

**RESPONSE:**

16.     Please produce a copy of any plan, policy, or guideline the Defendant requires or encourages its agents or employees to adhere to relating to the evaluation and reduction of patients' risk of pressure ulcers, bedsores, or skin breakdown.

**RESPONSE:**

17.   Please produce any schedules, logs, or any other written documentation of the times when Mr. Oldham was turned, moved, or repositioned in his bed while a resident of Shady Lawn beginning on or about November 22, 2011.

**RESPONSE:**

18.   Please produce a copy of any plan, policy, or guideline the Defendant requires or encourages its agents or employees to adhere to relating to the evaluation and reduction of patients' risk of falling.

**RESPONSE:**

19.   Please produce any schedules, logs, or any other written documentation of the times when Mr. Oldham was moved during his residency of Shady Lawn.

**RESPONSE:**

20.   Please produce any incident reports, internal memoranda, or other writings relating to any aspect of Mr. Oldham's care or injuries during his residency at Shady Lawn.

**RESPONSE:**

Respectfully submitted,

*[signature]*

Vanessa B. Cantley
Megan R. U'Sellis
BAHE COOK CANTLEY & NEFZGER PLC
Marion E. Taylor Building, 6th Floor
312 S. Fourth Street
Louisville, KY 40202
Tel. (502) 587-2002
Fax (502) 587-2006
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing was served along with the Complaint.

*[signature]*

Counsel for Plaintiff





PAM W. PERRY
TRIGG CIRCUIT CLERK
P.O. BOX 673
CADIZ, KY 42211



Pam W. Perry
Circuit Court Clerk
Trigg Circuit & District Courts
Trigg County Justice Center
41 Main Street, P.O. Box 673
Cadiz, Kentucky 42211-0673

Cl  12-CI-00259
656279

EXTENDICARE HOMES, INC. D/B/A SHADY, LAWN
CSC-LAWYERS INCORPORATING SERVICE CO.
421 WEST MAIN STREET
FRANKFORT KY 40601